UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ANTHONY NEUMAN,

        Plaintiff,                        Case No. 1:11-cv-223

v.                                      Honorable Gordon J. Quist

GEORGE JURKAS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.    Factual allegations

Plaintiff Anthony Neuman presently is incarcerated at the Cooper Street Correctional Facility, though the actions of which he complains occurred while he was housed in the Muskegon

County Jail.  Plaintiff sues Muskegon County Sheriff George Jurkas and the Muskegon County Sheriff's Department.

Following Plaintiff's arrest on March 5, 2008, Muskegon County Deputy Steve Farkas walked Plaintiff into the jail receiving area.  Deputy Farkas opened a holding cell and asked Plaintiff to remove his boots and have a seat in the cell.  Plaintiff asked if he could have a pair of shower shoes, because he was wearing no socks and did not want to step barefoot onto the dirty cell floor.  Farkas told Plaintiff that they had run out of shower shoes.  Plaintiff repeated his request of Farkas.  Farkas asked Plaintiff, "[A]re we going to have to do this the hard way[?]"  (Compl., Page ID#4.)  Plaintiff said nothing, but shrugged his shoulders.  Farkas told Plaintiff, "[Y]ou either get your ass in the cell or we're going to put your ass in."  (*Id.*)

Plaintiff removed his hooded sweatshirt.  He then saw Deputy Gary Wilks step over next to Farkas.  Looking over Deputy Farkas' shoulder, Plaintiff asked Deputy Wilks to get him some shower shoes.  Deputy Wilks looked at Deputy Farkas and then at Plaintiff.  At that point, Deputy O'Grady slid a can of pepper spray down the counter from the inside of the control office.  Deputy Wilks again looked at Deputy Farkas before picking up the pepper spray.  Deputy Wilks sprayed Plaintiff in the face.  When Plaintiff raised his hands to block the spray, Deputy Farkas plowed into Plaintiff's back, causing Plaintiff to be pushed to the floor on top of Deputy Wilks.  Officer Chris Martinez joined the other officers, grabbing and twisting Plaintiff's right wrist.  Deputy Patrick Kettring grabbed Plaintiff's left arm.  As the officers moved Plaintiff's arms around his back, Deputy Wilks repeatedly struck Plaintiff above the left eye, causing a two-and-one-half to three-inch gash.

Shortly thereafter, Plaintiff was fully restrained and strapped to a chair.  He was then placed in a holding cell.  Plaintiff's head was bleeding copiously and his right handcuff was very

tight on his hand. Plaintiff repeatedly banged the chair into the door and yelled that he could not feel his hand. After some time had passed, someone opened the cell door to loosen the cuff. He noticed Plaintiff's bloodied condition and called a nurse. The nurse examined Plaintiff's wrist and forehead gash and determined that Plaintiff needed stitches. Plaintiff was transported to Hackley Hospital, where he received stitches and x-rays. Plaintiff contends that he continues to have pain and dim vision in his left eye, as well as numbness to his right hand.

For relief, Plaintiff seeks monetary damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff sues the Muskegon County Sheriff's Department. The sheriff's department does not exist as a separate legal entity; it is simply an agent of the county. *Vine v. County of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988), and *Bayer v. Almstadt*, 185 N.W.2d 40, 44 (Mich. Ct. App. 1970)). Accordingly, the Court will dismiss the Muskegon County Sheriff's Department. However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Muskegon County.

A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles County v. Humphries*, 131 S. Ct. 447, 453-548 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect

the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. The Court must "identify the officials or governmental bodies which speak with final policymaking authority for the local government" in a particular area or on a particular issue. *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. MICH. COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the Court looks to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the sheriff has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because his allegations have not identified a policy or custom. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell*, 436 U.S. at 690. The Sixth Circuit has explained that a custom

> for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe*, 103 F.3d at 507 (citations and quotations omitted).

Plaintiff makes no allegation that the assault he describes was made pursuant to a policy or custom. Indeed, Plaintiff fails even to suggest that any practice or custom was the source of his injuries, and he entirely fails to name either the county or the sheriff in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, even assuming that Plaintiff intends to imply that Sheriff Jurkas was negligent in supervising his employees in this particular situation, such an allegation falls far short of showing that Jurkas or the county had any custom that resulted in the conduct that caused Plaintiff's injuries. First, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Second, any allegation that the sheriff was negligent in his situation does not show that the sheriff took "a course of action deliberately chosen from among various alternatives." *Doe*, 103 F.3d at 507. Third, mere negligence in failing to take preventive measures is insufficient to show § 1983 liability. *Molton v. City of Cleveland*, 839 F.2d 240, 246

(6th Cir. 1988). In other words, allegations that there were negligent acts by the sheriff as the policymaker for Kent County, without a showing that the acts were the result of a policy or custom, do not support liability under § 1983. *Molton*, 839 F.2d at 246. For all these reasons, Plaintiff has failed to allege that the sheriff, as final policymaker for the county with respect to conditions of the jail and operations of the deputies, had a policy or custom that caused Plaintiff to be deprived of a constitutional right.

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, the Court will dismiss Plaintiff's action because he has failed to state a claim upon which relief may be granted.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: April 21, 2011            /s/ Gordon J. Quist
                              GORDON J. QUIST
                         UNITED STATES DISTRICT JUDGE